MAURICE JOY, RESPONDENT, v. HYMAN FLAX, APPELLANT.

Submitted October 27, 1924—Decided February 6, 1925.

To warrant the admission in evidence of X-ray plates, there must be testimony offered—first, of the trustworthiness of the process and instruments used in the production of the plates to at least apprise and satisfy the court that the method used to obtain the plates was one generally recognized as trustworthy, and second, that the plates depict by such process the condition of the body or part of the body of the person purporting to be the subject of the plates.

On appeal from the Essex County Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the appellant, *Frank G. Turner.*

For the respondent, *Kessler & Kessler.*

The opinion of the court was delivered by

KATZENBACH, J.  This is an appeal from a judgment of the Essex County Circuit Court.  The action was instituted to recover damages for injuries growing out of an automobile accident on Warren street, in the city of Harrison.  On April 7th, 1923, the plaintiff, Maurice Joy, was standing on a street in Harrison when a friend, John Treanor, came along in his

automobile and invited him to take a ride. Joy accepted the invitation and got into the rear seat of the car. Treanor then went to get another friend to join them in the ride. He was proceeding in a westerly direction on Warren street. A truck of Hyman Flax, the defendant, driven by a servant, Brodkin, was traveling eastwardly on the same street. On the southerly side of the street an automobile was ranked. Brodkin, in endeavoring to either pass the ranked car or to turn the car he was driving around in Warren avenue, struck the automobile of Treanor. Joy was thrown out of the Treanor car, fracturing his skull. Impaired sight and hearing resulted. The usual conflicting testimony as to negligence was presented. The questions involved were submitted to the jury which returned a verdict for Joy of $3,500. From the judgment entered upon this verdict the present appeal has been taken.

The first point argued by the appellant is that there was no proof of the negligence of the defendant submitted by the plaintiff. The testimony offered by the plaintiff tended to show that the Treanor car was on the right side of the street, and that the defendant's car, in an attempt to either turn out from behind the rear of the ranked car, or to turn around in the middle of the block, struck the Treanor car. There is evidence that Treanor's car was being operated at the time of the accident at a speed not exceeding six miles an hour. Brodkin testified that his truck was in second speed. There was testimony that, when in second speed, it could go from ten to twelve miles an hour. We think the evidence sufficient to submit the question of negligence to the jury.

The second point pressed by the appellant is that Treanor was guilty of contributory negligence. If he was, which we doubt, his negligence could not be imputed to Joy, who was a passenger in the car. We find no evidence of any contributory negligence on the part of Joy.

The third ground of appeal is that there should have been a direction of a verdict for the defendant. The testimony already mentioned presented evidence which warranted, in

our opinion, the submission of the case to the jury by the trial judge.

The fourth point argued by the appellant is that the court erroneously charged the jury when it said: "It was the duty of each man to proceed on the right side of the improved portion of the road." It is contended that the court did not correctly lay down the law as contained in chapter 156 of the laws of 1915, known as the Traffic act. There was no request to charge any portion of the Traffic act. What the court did say, taken in its proper position in the charge, was not erroneous.

The fifth point argued is that certain X-ray plates of the skull of Joy were admitted in evidence without proof. The plaintiff called as a witness John F. Haggerty, a practicing physician and surgeon. He was shown some X-ray plates. Counsel then asked him, "What did you find as to his [Joy's] skull condition?" This question was objected to upon the ground that the plates were not taken under the doctor's supervision. The court permitted the question to be answered, and also admitted in evidence, over objection, the X-ray plates, without proof that they were plates of the skull of Joy, depicting his skull injury. An exception was duly taken. The court said proof was not necessary if the doctor testified that they were plates used in the treatment and diagnosis of the injury. We think this ruling of the trial judge wrong. The general principles governing the admission in evidence of X-ray plates are the same as those which govern the admission in evidence of photographs. By the use of X-rays a representation of things not discoverable or observable by the use of ordinary eyesight is obtained. Whether or not the X-ray plate truly depicts what is not discernible to the eye depends in a large measure upon the correctness of the process and instruments used in making the plates. To justify the admission of such plates there must be testimony of the trustworthiness of the process and instruments used to such an extent as to apprise the court that the method used to obtain the plates was one generally recognized as trustworthy. There

must also be testimony that the plates depict the condition of the body, or the part of the body, of the person purporting to be the subject of the X-ray plates. In the present case no evidence of this kind was offered. The respondent claims that the testimony given by Dr. Reissman later in the case cures the error and made competent the testimony of Dr. Haggerty. A reading of the testimony of Dr. Reissman fails to disclose any proof of the making of the X-ray plates by him which justifies the respondent's contention.

Exceptions were taken to several questions and answers in the testimony of Dr. Haggerty and another physician, called as a witness, Dr. Hurff. We have examined these and have reached the conclusion that the appellant was not harmed by any of them.

For what we deem error in the admission of the X-ray plates the judgment below will be reversed, and a *venire de novo* awarded. As, however, the improper admission of the X-ray plates affects only the question of the respondent's damages, and does not affect the question of the appellant's liability, the new trial will be limited to the question of damages only.